Virginia Armendariz was a 52-year-old woman with no criminal history whatsoever when she crossed over the border into El Paso and a little less than 40 kilograms of marijuana was found in her truck. There's a very what I would say a very odd factual basis in support of her plea that at least attempts to support a guilty plea on the basis of deliberate ignorance. Now I would say and I guess I want to talk about the facts just a little bit because the government spends a lot of time talking about the facts in their responsive brief. There were some suspicious circumstances to her giving her truck to somebody in Mexico. She was told she was answering a job she was told that they need to put a GPS on her truck and that's why she gave her truck. She said it's I was scared about it I was nervous about it however she also said that her suspicions were calmed when they said you can run the truck ask them to run the truck through the x-ray and so she thought okay I can do that I'm not worried anymore. The factual basis I think reads very strangely because it as I said it attempts to set up a deliberate ignorance factual basis. I don't know if it accomplishes that and I would say even apart from the immigration aspects of this case the court's decision not to let her withdraw her guilty plea would be troubling because she's asserted her innocence. She says I didn't really understand what deliberate ignorance was she did it in a timely way and so even without the immigration aspect I think it would be a troubling decision because the court did not make findings on all the car factors but I don't want to dwell on that I just wanted to mention that because really this is about the immigration aspects the immigration consequences of a guilty plea. In Padilla versus Kentucky and this quote is this section is quoted by this court in the Urias Marufo decision the court said when the deportation consequence is truly clear as it was in this case the duty to give correct advice is equally clear. As I understand it the but I'm asking you so you can correct me and we'll get it exactly right but the record indicates that her attorney told her that her deportation was quote very likely? So the court said that actually the magistrate judge when he took the plea said that it was very likely. Her attorney said you should talk to an immigration lawyer. That's what her attorney said. What she says in her affidavit is that she contacted an immigration lawyer and that the immigration lawyer said well there's nothing to fight until you're convicted and she understood that really through her daughter that talked to the immigration office also understood that after she had pled guilty that's when the fight for the immigration side would begin but what the court found because I think you're probably most interested in what the court found on that question the court said and it's it's kind of interesting this is it pages 190 through 190 not not 190 through 191 of the record because the findings were oral they were not put into a written order but the court found that the advice from her attorney was that there would be deportation would likely be deportation and then he correct himself and said could be so in one sentence he goes from would to would likely to could and and I believe the court the district judge was correcting himself because I think that is what the criminal lawyer advised there could be deportation consequences why is that wrong because with the possibility of asylum withholding of removal and relief under the Convention against torture as well as the fact that many many people are never removed following convictions why is that not correct that she could be removed how is it that the briefs assume that it was false or incorrect or incomplete information but is it so certainly not really false but but incomplete information and here's why your honor and I did cite a Ninth Circuit case that address that specifically but I know this isn't the Ninth Circuit but specifically did address that the fact that there are occasionally other consequences there I mean other reliefs but the law is very clear that when you're a legal permanent resident and you were convicted of an aggravated felony and there's no question this was that there is no defense to removal now once you are removed once you are ordered removed sometimes then there can be something else so for instance asylum Convention against torture she wants to stay in the United States these are all methods by which she could stay in the United States and be an aggravated felon legally as well as the fact that the government often doesn't get around to removing people which I don't know if we can consider that or not sure and yes and I don't know that and I don't I'm not an immigration lawyer so I don't know that and that's not my experience but but those things come after I guess what I'm saying is those things come after an order of removal so she would be order removed based on this conviction whether you know she fled and became a fugitive but they never found her to actually get her out of the country I don't think that that's something in it regret the criminal defense lawyer could say is but if you become a fugitive maybe maybe you can avoid this consequence probably not probably not also the Convention against torture I mean it it's a very high burden to meet and frankly she there were no facts at all to support that if she had been a cooperator in some terrible drug case maybe that could have been a factor but it but it just wasn't in this case do you have a case that says that this was not good enough information well the information that was given by the immigration lawyer that it's possible that you could be removed and you should consult with this immigration lawyer that that on its face is not appropriate information because we would have to find that the information given was not appropriate correct and then we would also have to find that that that wasn't cured by the courts opportunities at the at the so we have there's several steps so what's the best case for the first step well truly I mean this is this is the the rub I guess is that judge Garza's concurrence in Urias Marufo says the majority says Padilla says where the outcome is clear you have to give clear advice it's not enough to say there might be consequences that's what the majority in Urias Marufo says we've just discussed at length that there might be consequences yes yes but I mean what judge Montalvo did is he really seemed to rely on that concurrence in Urias Marufo and and our point is I don't think the concurrence is correct and so I guess you're asking has the Fifth Circuit decided that I believe that they did I believe that the majority in Urias Marufo did decide that I believe they relied on that language in Padilla that it's clear but I will tell you honestly judge Garza disagreed and said that's not clear and judge Montalvo I believe went with that concurrence more than he did the majority opinion in Urias Marufo so if we were to write an opinion on the first step that's saying that the court that the lawyer erred and it wasn't good enough what would the lawyer's duty is it it would say and I would say it was quote this is not this this is assuming arguendo it's not foreshadowing I understand your honor but I believe it would say like the majority did in Urias it would quote Padilla saying when the deportation consequence is clear the advice must also be clear and it does say that the failure to give that clear advice cannot be saved by the court's colloquy Padilla says that so I also would say another important aspect of this is the Lee case that came out of the Supreme Court more recently in 2017 that case actually does talk about more focuses on what kind of prejudice you have to show because one of the things that government says in our case is she was guilty anyway so where's the harm but what Justice Roberts said in Lee was the harm is that you were denied a trial under under normal Strickland analysis you have to show not just error but you have to show that the result would have been different what Lee says is that under this kind of analysis when you say my plea was involuntary because I did not understand the immigration consequences all you have to show is not that and I would have won the trial what you have to show is I would have chosen to go to trial and Justice Roberts says because the right to trial is such an essential right some people would choose to go to trial if they have a two percent chance of winning because that's how important the immigration aspect of the consequence is so I I would say that is another case I don't think it speaks directly to your honor's question about exactly what does the advice need to be but let me get back to the judges findings were that that the advice was there could be consequences and I do think Padilla says that's not enough I already said that's not enough I think if the court were to affirm this basically the court would have to be saying we're going to go with the concurrence on areas rather than the majority decision on what if we were to say that the immigration consequences are not certain that that is that's the first question are the immigration consequences certain and if they're not certain than saying you might be deported is not incorrect again I believe that it's not in question that there would be an order of removal based on this the the things the government raises that could have prevented or actual deportation are things that might come after removal you've been order removed now maybe there's an exception that could keep you here maybe you're you become a valuable witness in a government case you could be paroled into the country but none of those things or or whether you get asylum that's a potentially a temporary result being paroled in the country is a temporary result becoming a fugitive is a temporary result the fact is you would be ordered removed and that is not a temporary result that is what the law provides and there's while there might be some other temporary relief from that there is no legal relief to the removal I did want to talk just a little bit about the car factors because I think it's important that the judge did not make any findings there's seven car factors he made findings about a couple of them he said I'm not concerned about any delay in filing I'm not concerned about wasting judicial resources he found those did not go against Miss Armendariz I think he didn't make a specific finding about whether the court would be inconvenience but I think in line with those other findings he would have found that that did not go against Miss Armendariz this was a simple case it was a short case it would have been a short trial he really only made findings against Miss Armendariz on whether the plea was knowing involuntary and then that gets into our immigration discussion but I also think it's really on the first element of car which is whether she asserted her innocence this is a factor that is really a very important factor that courts talk about a lot did she assert her innocence she did assert her innocence now the government says in its brief well the judge didn't have to find that credible but he did find her credible and well me I shouldn't say he found her credible he did not find her statement incredible uncredible and he did rely in fact he says he relies on her words when he on the knowing involuntary he says in Miss Armendariz his own words her lawyer talked to her about potential immigration consequences so I would say I mean he didn't make specific credibility finds but he did rely on her own words and that's the only thing he what do we do with the fact that the magistrate judge listed likely deportation very likely deportation not being allowed to stay here prison time for illegal reentry if deported denial of u.s. citizenship and possible relief from an immigration judge and she said she understood these consequences so Urias Marufo says the colloquy cannot save the failure of the lawyer to serve the function of giving her the advice about the specific consequences Urias Marufo specifically says that the lawyer failed to give her the correct advice if she said she got advice she understood all of these things and the only place she would have had the understanding was from her lawyer and I and I guess what this gets to is there's a big difference between saying you could be deported and very likely deported is what the magistrate judge said and she said yes yes and I'm still gonna say I still think there's a difference between saying very likely and saying you have no defense to deportation so are there magic words it it's a clear removal and I am interchanging deportation removal they're actually two different words it's an order of removal deportations actually when they physically take you across the border but it's it's an order of removal and there is no defense to it when you're convicted of aggravated felony we've discussed there are some things that might prevent the actual deportation but there is no defense to the removal and I believe my initial time is up you've saved time for a good morning your honors and may it please the court Charles Fowler for the United States I want to start with whether the lawyer in this case gave the defendant objectively unreasonable advice and within that talk about one what the standard should be in in a immigration related case of what advice the lawyer actually has to give and then talk about what the record shows in this case the lawyer did say to the defendant and then I'll move on to the the question of prejudice which we believe would would sustain the judgment here even if the lawyer didn't quite give sufficient advice so on the standard that should be applied by this court when the defendant claims that she was not sufficiently advised on the immigration consequences judge Elrod kind of took the took the words out of my mouth exactly where I was going with this which is that no court has demanded a lawyer give magic words on the likelihood of deportation the holding in Padilla as judge Garza recognized in his concurrence in Urias Modufo was that the lawyer has a duty to advise a criminal defendant of a risk of deportation this court has echoed those words in its chaotic decision and other courts have addressed this question a little bit more directly the government's brief site 7th and 8th Circuit cases explicitly rejecting the notion that a lawyer is required under to tell a defendant that she will virtually certainly be deported or that she will definitely be deported and that is the correct reading of Padilla for the very reason that no outcome of a later to be held in the future contested removal proceeding before an immigration judge which entails of course its own series of appellate review is definite or certain the court recognized a number of ways in which a defendant might not be deported the convention of the Convention of Against Torture is one withholding of removal is another I'll just add a couple to the list that are that are avenues for a defendant to stay in the country even if they are convicted of an aggravated felony an S visa are also not categorically unavailable to someone with an aggravated felony conviction and I don't want to get out of my depth here I'm also not an immigration law expert but I understand that when someone is a lawful permanent resident they remain eligible for at least some types of adjustment of status from removable back to an LPR which entails some waivers of grounds for removal that may not be categorically unavailable to someone who's been convicted of an aggravated felony so the bottom line here in addition of course just to the fact that someone might as the Seventh Circuit noted elude deportation for any number of other reasons is that it's simply not not only is it not required to tell a criminal defendant that she will definitely be deported but it would not even be a correct statement and can't be what Padilla is requiring so what did the lawyer say in this case and the evidence in the record it I think principally and it's what the district court relied centrally on is the colloquy in which the magistrate judge explained without using magic words like you know removal removable deportable explained you will very likely be deported you are not going to be allowed to stay in the country if you return you'll be subject to serious criminal consequences you won't be allowed to work here the magistrate judge then said again this is this is correct that there is a separate proceeding in which an immigration judge may be able to consider some forms of relief but you you will very likely be deported and then the magistrate judge asked two distinct and equally important questions one do you understand these consequences the defendant answered yes and two did you discuss these consequences with your lawyer and she answered yes I think the only plausible conclusion from that colloquy is that she discussed the the quite strong risk of deportation that the magistrate judge had just explained to her with her lawyer there's additional evidence in the record that reinforces the conclusion that she had these discussions with her lawyer and that comes from the plea agreement itself the plea agreement contains a full page explaining to miss Armendariz her risk of deportation including the statement which is again a correct statement of law I think a correct paraphrase of how the area that her conviction if she is a non-citizen will make her presumptively deportable the plea agreement then goes on to have her acknowledge that she was closely advised by counsel with respect to that immigration consequence and then once back in open court under oath at the rearrangement she confirmed that she had gone over the plea agreement with her lawyer that she understood and all of its terms so you've got the magistrate judge independently explaining the consequences to her on the record confirming that that she had discussed them with her lawyer and then reinforced by her saying the same in the plea agreement so the the duty to advise her that there was a risk of deportation was certainly discharged in this case I'll point to a couple of findings as well in the record the magistrate judge in the plea colloquy found on the record at the hearing that she understood the immigration consequences of her plea when the magistrate judge entered a report and recommendation he again specifically found that she understood the immigration consequences with her plea and found that she had acknowledged on the record that she had discussed the immigration consequences of her plea with her lawyer that finding was then adopted by the district court when he accepted her plea of guilty fast forwarding then to the hearing on the motion to withdraw the guilty plea defense counsel pointed out that the the judge is finding on the record he stated it a couple of different ways he explained that by her own words the lawyer had informed the defendant that there would likely be there could be there would there would be there were likely to be there could be immigration consequences there's no doubt that the district court with respect to that one sentence appears to have equivocated a little bit wasn't sure exactly how he wanted to express that finding but I don't think that's dispositive here given that the actual back-and-forth under oath with the defendant during the plea colloquy that that sentence was based on was clear the findings by the by the district court and accepting her guilty plea were likewise clear and so the right on the record here certainly the district court has made a finding that she was advised of and understood her very likely deportation could you address the car factors briefly before going into your president prejudice argument because the court could have let her withdraw her plea and let her go to prison and you know if she rolled the dice to see if she would go to prison she had a good plea where she was not going to serve any time for this importation of a significant amount of marijuana but so do you have any comments on your your friend on the other side argued that under the regular car factors that this plea should have been allowed to be withdrawn for she touched on it a couple of times yes your honor the government's response would be that the way this motion was litigated in the district court certainly focused on one of the car factors which was whether the plea was knowing involuntary and that was the context in which the the motion rested centrally on Padilla and so I I don't think in a couple of points here on the car factors more generally one it would be the defendants burden that the car factors are just the the mechanism that this court is outlined under rule 11d to be for determining whether there exists a fair and just reason to allow a defendant to withdraw her guilty plea they're non-exhaustive no you know there's there's no one factor or particular combination of factors that controls and he gives a totality it could have gone either way right the court could have let her withdraw she's saying she really didn't understand and it's within it's within a reasonable amount of time it's the court you know the court could have but chose not to is that I mean I guess it would be very difficult to find that that were error right so for one the court this court reviews what the district court did with respect to balancing the car factors for an abuse of discretion given that the on this purported Padilla issue I don't think the district court abused its discretion by not making specific findings with respect to her claim of innocence I think the claim of innocence was in any event it would be impossible to go back and say there was an abuse by not by not resting a finding on that when it was not the focus of the motion it was in any event purely a post hoc affidavit that contradicted her sworn admissions and I would take issue with my opponent's suggestion that there was some sort of weakness in the factual basis there is a detailed it's on I believe ROA 254 and then there was a second portion filed under seal at 256 detailed factual basis where she specifically acknowledges that she was afraid there were drugs in the car and then made a deliberate decision to take the risk a few days later and then she specifically admits that she was deliberately ignorant of the presence of the drugs in her car there were 90 bundles of marijuana in the in the truck each about a pound it was it comes out to about 88 pounds of marijuana if she had if she had been inclined to try to satisfy herself that there were nothing and nothing illegal in the truck it would not have been difficult for her to find these drugs daughter warned her not to do this is probably drugs and that sort of thing and the GPS had to be installed and that seemed odd I think plenty of circumstances that she's admitted to support her guilt under the deliberate ignorance standard and and she adopted all of those admissions under oath and she pled guilty to the offense there's been no no attack whatsoever on the sufficiency under rule 11 for example on the sufficiency of the colloquy on guilt as opposed to on immigration consequences and so when the only only thing in the record contesting that whatsoever isn't after the fact affidavit essentially backtracking her sworn admissions of guilt under oath I certainly don't think in this court's cases the government relies on Struther which specifically addresses the very scant weight this court should given after the fact affidavit contradicting clearly you get to prejudice unless one of my colleagues wants to explore that more sure your honor so it is correct that this court in Urias Marufo said that the colloquy cannot save counsel can't discharge counsel's duty but this court has been equally clear in the coyote decision from 2014 that the colloquy is certainly important in determining whether the prejudice standard was met the en banc court then reiterated that that principle in Bottomula in 2016 and in this case it I think it would be very very difficult to find that there was in that there was prejudice where the magistrate judge was as clear as he was and so I'm going back to the same part of the colloquy here that I've discussed in the context of counsel's advice which was that the magistrate judge said your deportation is very likely and all of those things you'll be subject to severe penalties if you come back and I want to point out as well it seems like at the hearing on the motion to withdraw there was really no dispute that if the district court recognized that the magistrate judge had done a great job of explaining the immigration consequences to the defendant and even defense counsel agreed and volunteered that that the magistrate judge and this is it ROA 183 knew she was going to lose her residency and he was trying to communicate that to her defense counsel on a couple of occasions said that she believed the magistrate judge had done a great job of confirming that she understood the immigration consequences and to then argue that the very next question she answered it given all of the things I've just explained to you which is it still your wish to plead guilty she says yes and then he says okay so how do you plead guilty it's to me very difficult to find that she did so not knowing the consequences that everyone seems to agree the magistrate judge had just explained to her this court in coyote stopped somewhat short of saying that the that the colloquy the magistrate judge going over all this with the defendant was dispositive because it didn't need to there were other factors that weighed against prejudice in that case and as the pretty much all those same factors also weigh against prejudice here but the colloquy I think in this case is stronger than what this court has confronted in coyote and in Bata Mula so if ever there were a case to say this is enough you just cannot maintain a claim that you didn't understand the things you were just told when you pled guilty I believe this would be the case and that's exactly what the Third Circuit said in a similar case to this one which the government cites in its brief opposing counsel's argument would seem to be saying that just as a matter of law that this doesn't meet Padilla on its face but it seems that there are findings that the district court adopted that she did hear from her lawyer so we would have to find that clearly erroneous wouldn't we to get even through the first part of this case yes your honor I think and that's sort of the way the government's laid it out in our briefing I do believe the court found the that the lawyer told her very likely and that the court would have to find that that that was clearly erroneous or I guess either the lawyer didn't say very likely or very likely is not good enough as a and I think the only way on that second one I think the only way to get there would be to reach the holding that no court has that basically is the magic word standard and and therefore I think it would be very difficult to get there in this case and if the court has nothing further for me the government would ask that the defendants conviction be affirmed thank you mr. Fowler you still injured for rebuttal thank you just to address first that last question the court had about the courts factual findings we actually made it to the position our briefs and we still take that position that no we're not saying that the court made any clearly erroneous factual findings we're saying they are legal findings his factual finding about the advice is and he removal could is not very strong and that's at 190 and 191 in his findings his oral findings could really is the equivalent of saying there might be consequences so he he said he said it a little stronger but he ended that sentence with he corrected himself said that there would be there would likely be well that there could be that's that's what judge Montalvo found so that is his factual finding that the defense lawyer said that he advised her there could be immigration consequences I do want to mention with respect to the colloquy overcoming the lack of specific advice from defense counsel and this is not an immigration case and it's it's cited in our brief it's an unpublished decision but United States versus Tran inside in our brief or reply brief rather it had not been it hadn't come out of this court yet when we filed our it says that this court said that finding a defendant or confirming in the plea colloquy that he'd had an opportunity to discuss defenses with the attorney was an insufficient remedy to a defense deficiency by defense counsel I also want to mention that a couple of the cases cited and actually just mentioned by the government right now the coyote in Batamula those cases predate the Supreme Court case Lee versus United States that Lee decision is in 2017 and in that case the court said where there are consequences that are certain those consequences that would have changed a person's decision on whether to go to trial or not that's the prejudice we don't have to show that there is a definite outcome to the trial we do also cite some cases in our reply brief and this is at page 3 where the Supreme Court has said that removal is a virtual certainty for an alien found who have an aggravated felony conviction I don't think again the the things that government counsel mentioned right now why there would not have been deportation are not defenses to removal they are things that could happen after you've been ordered removed I think that's a really significant difference I think it's a really significant difference whether the discussion is there could be consequences or it is a near certainty that you will be removed so are you saying we don't do a prejudice analysis no the prejudice is just different in this context it's what's Robertson Lee that the prejudice is that you don't get your trial that you want a trial you don't have to you don't have to show a likelihood of success at trial and I do want to just my last minute get back to the likelihood of success this court I didn't cite in the briefs but we cited it we talked about it at unless Lee clearly overrules our on bonk case law to follow both coyote which is incorporated back in bottom aren't we aren't we we unless Lee over rules and says something different we have to keep following we're just a panel of the court so we would have to use the prejudice standard that we have as an on bonk court when we well I think Lee does change that and that's the Supreme Court and I think it clearly overrules this and you think so and I mean I don't think it's listed that way in the I mean we don't go by this but the West law or whatever you know that's um do you think it clearly overrules our on bonk case law even though it's sub solentio or something I mean it's obviously it's not it it's not a direct ascension to the Supreme Court it does not mention the on bonk decision but I believe it does set out a new standard I believe that it does I do my last 15 seconds just want to mention again though this one case that we talked a lot about at the hearing of the motion withdrawal which is a rise to hot cobalt which is a Fifth Circuit case that says really get in an area of blurring negligence and criminal intent and I think that goes to the viability of her trial which I think this was a very triable case and and that's what getting back to even putting aside the immigration consequences I think the court should have granted this on the car factors we can't review your time has expired now miss Dillinger thank you thank you your case is under submission remaining case for today but drove versus Louisiana